## SOUTHWESTERN LIGHT & POWER CO. v. OKLAHOMA TAX COMMISSION et al.

No. 27058. Oct. 20, 1936.

Rehearing Denied Dec. 1, 1936.

Leslie Pain and S. I. McElhoes, for plaintiff.

C. D. Cund, C. W. King, and Wendell Barnes, for defendants.

GIBSON, J. The plaintiff seeks by original action in this court to compel the Oklahoma Tax Commission to issue to it a license and to enjoin the commission from enforcing and collecting an alleged illegal corporation license tax.

Our consideration of this case necessitates a construction of chapter 155, Session Laws of 1933, and more particularly certain portions of sections 3, 4, and 5 thereof.

By that act corporations of the class to which the plaintiff belongs are required to obtain a license to do business in this state, and it is the duty of the Oklahoma Tax Commission to collect an annual fee therefor, as provided by section 3 of the act, the material portion of which reads as follows:

"Each such corporation, association or organization shall pay for such license, a fee of one dollar per each one thousand dollars, or portion thereof, of the value of its capital stock employed in Oklahoma, as the value of capital stock employed in Oklahoma is defined in section five (5) hereof."

By the provisions of section 4 the corporation is required to return an annual report to the commission as follows:

"In addition to any other statement required by law, each and every corporation, association or organization, as enumerated in section one (1) hereof, subject to the provisions of this act, shall, between June 30th and August 31st of each year, file with the Oklahoma Tax Commission a statement, under oath of its president, secretary or managing officer, or managing agent in this state, in such form, including balance sheets, as said commission may prescribe, showing the amount of its authorized capital stock, interests, certificates, or other evidence of interest or ownership; the amount thereof then paid up; the number of units into which the same is divided; the par value of each unit and the number of such units issued and then outstanding; the book value of each unit outstanding; the location of the office or offices; the names of its officers and directors and the residence and post-office address of each; the number of shares of stock or other evidence of interest or ownership, held by each; the value of all property owned or used in its business and wherever located; the value of all property owned or used in its business within this state as it existed on the last day of June next preceding the filing of the aforesaid statement; the total amount of all business wherever transacted, during the year expiring on said last day of June; and the total amount of business transacted within the state of Oklahoma during such year."

There are further pertinent provisions in section 4 as follows:

"For the purpose of this act, bonds, notes, debentures or other evidences of indebtedness maturing two years or more after issuance, shall be treated as capital, and included as a part of the capital stock employed in the business, as defined in section five (5) hereof."

That portion of section 5 dealing with the method of computing the amount of the license fee reads as follows:

"For the purpose of computing the amount of license fees hereby imposed and payable by any such corporation, association or organization, the value of capital stock or other written evidence of interest or ownership employed in this state is hereby declared to be the value of that portion of the capital stock or other evidence of interest or ownership of the corporation, association or organization which equals the proportion which the property owned and business done in Oklahoma bears to the total property owned and business done by the corporation, association or organization."

Plaintiff has made its 1935 return to the commission and tendered the fee of one dollar for each thousand dollars of the value of its capital stock employed in Oklahoma as calculated by it. An examination of plaintiff's return discloses that the value of its capital stock has been determined by calculating the difference between the value of its total assets and its liabilities, including its bonded indebtedness maturing more than two years from the date of issuance thereof.

The commission denies that plaintiff's return shows "the full and true value of its capital stock employed in Oklahoma", and it alleges that the return "fails to show and report the full and true value of its (plaintiff's) property, real and personal, tangible and intangible, comprising its as-

sets situated in or employed with its business in Oklahoma, in that said plaintiff has omitted from its return and report of capital taxable stock the sum of $7,909,900 of so-called long-time bonds and indebtedness maturing more than two years from date of issue as a part of its said capital stock employed in this state."

The commission now demands the payment of one dollar for each one thousand dollars of capital stock plus such bonded indebtedness, asserting that under the provisions of section 4, as above set out, such indebtedness constituted a portion of the plaintiff's capital stock. It says that the question to be determined is whether the commission is authorized by the Corporation License Law to consider the borrowed money as property employed in plaintiff's business in Oklahoma and to include such indebtedness in its basis upon which to compute the license fee.

The plaintiff takes the position that the bonded indebtedness should be deducted as liabilities from the capital used in Oklahoma.

The license fee is to be computed upon the value of the capital stock of the corporation employed in Oklahoma (sec. 3); and the value of the capital stock so employed is defined in section 5, supra, as "the value of that portion of the capital stock * * * of the corporation * * * which equals the proportion which the property owned and business done in Oklahoma bears to the total property owned and business done by the corporation."

In the instant case, however, no question of apportioning the value of the capital stock arises because all the corporation's business is done in Oklahoma and all its property is located here. The fee is therefore based upon the value of its entire capital stock.

The Legislature having so measured the fee by the value of the capital stock, we are called upon to determine the legislative intent with reference to the means to be employed by the commission in arriving at that value.

An examination of the statute reveals that the value of the capital stock of the corporation should be determined from its books. That is to say, the Legislature intended that the commission should base its calculation of the license fee upon the "book value" of the capital stock of the corporation. This is revealed by the first paragraph of section 5 of the act, which pro-

vides that the commission, if dissatisfied with the return as made by the corporation, may ascertain the value of the capital stock "as shown by the books of said corporation. * * \*" We find in the act no further legislative direction in this regard.

"Book value," as defined in a majority of available decisions, is the market value of the assets of the corporation, less its liabilities. See Early v. Moor (Mass.) 144 N. E. 108, 33 A. L. R. 362, 366 anno. Arbitrary or fictitious values entered upon the books of the company are not controlling. Steeg v. Leopold Weil Bldg. & Imp. Co., 126 La. 101, 52 So. 232, 33 A. L. R. 366, anno.

Ordinarily money borrowed by a corporation forms no part of its capital stock (14 C. J. 380); the same, being a liability, is usually deductible from the market value of the capital assets in arriving at the book value of the capital stock.

But the Legislature has said that the evidences of the corporation's indebtedness of two or more years' duration "shall be treated as capital, and included as a part of the capital stock employed in the business, as defined in section 5 hereof." The commission says that this provision means that the amount of such indebtedness is to be added to the value of the capital stock employed in the business. However, the provision does not require the indebtedness to be added to the value of the capital stock, but merely requires that "bonds, notes, debentures or other evidences" of such indebtedness be included as a part of the capital stock employed in the business as defined in section 5 of the act.

Section 5 discloses that "capital stock" is treated as meaning the written evidence of ownership of the corporation, or, in this case, the stock certificates. The statutory provision here under consideration requires that the evidences of indebtedness of the character therein named be included as a part of that evidence of ownership. Upon the book value of the evidence of ownership as so defined, the license fee of the corporation is computed, and, in the absence of a statutory provision to the contrary, the corporation in arriving at that value may deduct from the market value of its assets the sum of its liabilities, including the long-time indebtedness here in question.

Such was the evident intent of the Legislature as gathered from the act as a whole. The book value of the certificates of stock representing the authorized capitalization of the corporation must be ascer-

tained, and upon that value the license tax shall be computed. The book value of the net assets reflects and is the same as the book value of the certificates. It is made clear that the corporation shall report all its assets and the value thereof, including, of course, the assets accruing to it as a result of the borrowed money evidenced by the long-time notes, bonds, or debentures issued by the corporation. It is further made clear that such evidences of indebtedness are not to be considered as assets for purposes of computing the tax, but as certificates evidencing the ownership of the company's authorized capital stock, thereby placing such evidences of indebtedness in the same position for all purposes as that of stock certificates.

However, the debts which those notes, bonds, and debentures evidence are not to be ignored in determining the book value of the assets or certificates of stock. They are liabilities and may be considered and deducted from the market value of the assets. The act does not prohibit such deduction.

The particular provision of the statute here under consideration is therefore rendered ineffective for any purpose in arriving at the value upon which the tax is computed, and the result is the same as if the provision had been omitted. Had the amount of the capital stock and not the value thereof been made the basis upon which to compute the tax, the result would be otherwise.

The corporation franchise tax statute of Texas has been called to our attention as containing a provision similar to ours with relation to the basis upon which the fee is to be computed. Interpreting that statute, the federal courts have said that the Legislature may include long-time indebtedness as a part of the capital structure of the corporation as a basis upon which to compute the fee. Southern Realty Corp. v. McCallum, 1 Fed. Supp. 614, Id. (C. C. A.) 65 Fed. (2d) 934.

Legislative authority to so measure the franchise or license fee is hardly disputable, but our Legislature has not seen fit to so measure the fee. The cited authority is therefore of little benefit here. The Texas statute is wholly unlike our statute in that the former specifically bases the amount of the tax upon the "outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than one year from the date of issue." The Oklahoma statute bases the fee upon the value of the capital stock, which capital stock, the Legislature has said, consists of the written evidence of ownership of the corporation and the evidences of its long-time indebtedness. A reading of the two statutes readily discloses their broad dissimilarity.

We are here concerned only with the manner in which the evidences of long-time indebtedness and the indebtedness itself shall be treated in the process of arriving at the value of the capital stock as defined in the act. Since the plaintiff has shown a clear right to the deduction of the debts as liabilities, it has established a clear right to the writ.

The writ is therefore granted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. RILEY, J., absent.