**In the Matter of Sales Tax Protest of FINASERVE, INC.**

**FINASERVE, INC., Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

**No. 76201.**

Court of Appeals of Oklahoma, Division No. 3.

Sept. 24, 1991.

Certiorari Denied March 31, 1992.

Jean A. McDonald and Roger A. Stong, Oklahoma City, for appellant.

David Allen Miley, Oklahoma City, for appellee.

OPINION

HUNTER, Chief Judge:

This is an appeal by Finaserve, from the Oklahoma Tax Commission's order denying Finaserve's protest to a sales tax assessment. In 1986, Finaserve sold thirteen Fina service stations to three purchasers. Two of the transactions involved the sale of

single Fina stations. Finaserve sold one station, located in Muskogee, to Pacer Oil Company for $75,000. Finaserve sold the other individual station, located in Lawton, to Carey Johnson Oil Company for $70,000. Finaserve sold the remaining eleven Fina stations, all located in Tulsa, to Circle K Corporation for $4,352,000.

The parties submitted this matter on a stipulation of facts. Finaserve introduced testimony and affidavits that are uncontroverted. The facts are, therefore, virtually undisputed.

The Commission assessed sales tax on the amounts shown in Finaserve's records as the net book value of the equipment associated with each of the thirteen stations. The net book value of the equipment totalled $496,314.43. Finaserve's net book value was equal to the equipment's actual market value when Finaserve bought it, less depreciation. Finaserve claimed at the hearing that the equipment sold with the real property was valueless. In support of this contention, Finaserve relied on testimony, affidavits and other exhibits. The Commission auditor who made the original assessment testified. He admitted that he based his assessment solely on Finaserve's net book value figures. The Commission's administrative law judge recommended, and the Commission ordered, that the Commission would base its sales tax assessment solely on Finaserve's records of net book value. The judge refused to consider the affidavits of the three purchasers of the Finaserve properties because, he said, they were "not supported by any corroborating or documentary evidence." The judge further said there was "no evidence contrary" to the net book value records. The Commission ordered Finaserve to pay sales tax on the entire net book value of the equipment. Including interest and penalty, this came to $49,898.12.

The judge recognized that the underground gasoline storage tanks at the stations were fixtures, and therefore not personal property subject to assessment. The judge nevertheless refused to recommend reduction of the sales tax assessment because Finaserve did not show "satisfactory evidence" contrary to the net book value records.

## FACTS

Finaserve and the Commission stipulated that each of the three purchasers of the properties bought them "primarily to acquire the real property associated with such service station." Finaserve submitted affidavits from a representative of each of the three purchasers. Carey Johnson's and Circle K's representatives both said in their affidavits that the equipment they bought with the realty was valueless. Carey Johnson discarded the equipment shortly after it bought the property. Within three months after the purchase, Circle K razed and abandoned the equipment it received from Finaserve. Pacer's representative said that Pacer had valued the equipment it bought from Finaserve on its books at $5,000.

Finaserve titled its form that contained the net book value figure "Authority for Retirement of Capital Assets." Finaserve prepared one of these forms for each of the thirteen properties it sold. The "Reason for Retirement" entered on each of the forms on the eleven Tulsa stations was "Poor financial performance." Finaserve's reason for selling the Muskogee station was that the property was "uneconomical for continued use as a service station."

Finaserve's employee, Robert Barbero testified that he had thirty-five years experience in the construction and remodeling of service stations. Barbero was in charge of building eleven of the thirteen stations sold. Barbero testified that Finaserve included the value of the tanks in the value of equipment shown in the net book value figures. Barbero identified an exhibit that showed the tanks had a value equal to about 30% of the total net book value of the equipment.

Finaserve had each of the thirteen properties appraised by an independent appraisal firm. The appraiser described each of the thirteen properties' improvements and equipment in detail. Virtually all the pieces of equipment the appraiser described

were fixtures. For example, the appraiser described underground and above ground pumps, walk-in freezers, steel canopies with fluorescent lights, and mercury vapor lights and poles.

## DISCUSSION

■■■ Appeals from the Tax Commission to this court are governed by 68 O.S. 1989 Supp. § 225. If the Commission's stated ground for assessing a tax is unsupported by the evidence that assessment must be reversed. *Chrysler Corp. v. Oklahoma Tax Com'n.*, 197 Okl. 641, 173 P.2d 933, 935 (1946). To affirm a Commission order, the evidence must support the order. *Suglove v. Oklahoma Tax Com'n.*, 605 P.2d 1315, 1317 (Okl.1980). The Commission order before us fails both tests.

The administrative law judge and the Commission refused to consider any fact in the record except the net book value of the equipment shown in the Authority for Retirement of Capital Assets forms. This was error.

### I.

The Commission admits that the underground gasoline storage tanks were fixtures and not subject to sales tax. Finaserve offered undisputed testimony that it included the value of the tanks in the net book value of the equipment. Finaserve also proved that the tanks' value amounted to 30% of the total value of the equipment. The record shows the portion of the equipment's net book value attributable to the tanks to be $148,894.33. The Commission, therefore, erred in not deducting that amount, at least, from the value of personal property subject to sales tax.

### II.

■■■ The Oklahoma Statutes require sales tax payments on the "gross receipts or gross proceeds of each sale of ... tangible personal property." 68 O.S.1990 Supp. § 1354. " 'Sale' means the transfer of either title or possession of tangible personal property *for a valuable consideration*

..." [Emphasis supplied.] 68 O.S.1989 Supp. § 1352(L).

The Supreme Court construed this language in *Magnolia Petroleum Co. v. Oklahoma Tax Com'n.*, 326 P.2d 821 (Okl.1958). The Court observed that the intention of the parties governs whether a finder of fact will treat improvements on the real estate as realty or personalty. There, the taxpayer sold an oil lease. The Court ordered the taxpayer to pay a sales tax on the value of the equipment located on the lease. The taxpayer had to pay, however, only because its lease authorized it to remove improvements that would otherwise have been fixtures. This clause in the lease, held the Court, caused the property to retain its identity as personalty. There is no such clause in any of the sale documents in this case.

The undisputed proof showed that neither Carey Johnson nor Circle K placed any value on the equipment that came with the property. Both discarded all such equipment shortly after the sale. The Commission, therefore, erred in assessing any sales tax on the equipment involved in the sales to Carey Johnson and Circle K. Some sales tax, however, might be appropriate on the property sold to Pacer, as Pacer admitted it valued the personal property it bought at $5,000. Nevertheless, the Commission erred in valuing that property at $51,334,34 for sales tax purposes.

The Commission erroneously treated the net book value of the equipment as having created an irrebuttable presumption of the equipment's value. The undisputed testimony revealed how Finaserve arrived at net book value. Finaserve did so by subtracting annual depreciation for tax purposes from the value of the property when Finaserve bought it. Here, Finaserve sold all the properties but one because they were performing poorly.

By itself, the net book value of equipment does not accurately gauge the equipment's worth to the buyer of the realty upon which the seller's equipment was used. Book value is only a statement of market value, determined years before, less depreciation. Book value of equip-

ment reveals nothing about the *present* sale value placed on the equipment by a buyer and seller. A fact finder may not properly ignore the facts of a rising or falling market, or of obsolescence of the equipment.

The Supreme Court addressed a similar situation in *Southwestern Light & Power Co. v. Oklahoma Tax Com'n.*, 178 Okl. 277, 62 P.2d 637, 640. In discussing book value of corporate stock the Court said:

Arbitrary or fictitious values entered upon the books of the company are not controlling.

The Commission's holding that the net asset value of the equipment alone determined the amount the buyers of the properties paid Finaserve was reversible error. The Commission should have considered the testimony of the parties in arriving at the value of personal property sold. That testimony revealed that the book value of the equipment was "arbitrary and fictitious." *Southwestern Light*, 62 P.2d at 640.

### III.

 The Commission admits that it may not properly assess sales tax on fixtures sold with the land. 60 O.S.1981 § 5 provides that personal property "affixed to land" is part of the realty. Thus, a land owner may attach personal property to the land or a building on the land by bolts, screws, nails, or otherwise permanently attach it. If the owner does so, the personal property is part of the real property. Any property Finaserve attached to the land here was, therefore, not subject to sales tax, regardless of the value the parties placed upon it.

The detailed descriptions of the properties in the appraisals show that the only pieces of equipment not attached to the ground or structures were old coffee makers, soft drink dispensers and other old and inexpensive appliances. We see nothing in the record to support a ruling that the buyers would have or did allocate any substantial amount of the sale price for such equipment.

This order of the Tax Commission is REVERSED and this matter REMANDED with directions to the Commission to vacate the order appealed from. The Commission shall dismiss this proceeding as to all equipment Finaserve sold, with the exception of Finaserve's sale to Pacer. The Commission shall refund the sales taxes collected on the equipment Finaserve sold to Carey Johnson and Circle K. The Commission shall consider how much, if any, sales tax is payable on the equipment Finaserve sold to Pacer.

REVERSED AND REMANDED WITH DIRECTIONS.

HANSEN, P.J., and JONES, J., concur.